UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES MOODY,<br><br>                Petitioner,<br><br>    v.<br><br>SCOTT FRAKES,<br><br>                Respondent. | Case No. C09-5204RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 30, 2009 |

Petitioner is a state prisoner currently incarcerated at the Washington State Reformatory, located in Monroe, Washington. This matter is before the Court on petitioner's petition for writ of *habeas corpus* filed with this Court pursuant to 28 U.S.C. § 2254. (Dkt. #2). Respondent has answered the petition and submitted the relevant state court records and petitioner has filed a reply thereto. Thus, the case is ripe for review and a decision by the Court.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner was found guilty of assault in the first degree by the Pierce County Superior Court on March 12, 2004. (Dkt. #10, Exhibit 1, p. 1). He was sentenced to a total prison term of life without the possibility of parole under Washington State's Persistent Offender Accountability Act ("POAA"), and to an additional 36 months for a deadly weapon enhancement to run consecutively to the life sentence. (Id.

at pp. 2, 5). The Washington State Court of Appeals, Division II, summarized the relevant facts of this case as follows:

> During the summer of 2003, Fern Anderson, age 70, and her husband Gaile, age 69, lived in a duplex with Moody. The Andersons shared the kitchen, living room, and bath with Moody, but the [sic] they had their own bedroom.
> On July 27, Moody came home late after a night of heavy drinking. He was loud and his behavior disturbed the Andersons, who were asleep. Fern Anderson got up, told Moody to be quiet, and then went back to bed.
> A short while later, Moody barged into the Andersons' bedroom and stated in a raised voice, "Nobody gets in my face, you mother fucker . . . I'm going to kill you." Gaile Anderson confronted Moody about his behavior and a scuffle ensued. Moody retrieved a knife from his bedroom and stabbed Gaile Anderson 11 times, causing serious injuries that required emergency surgery. After the attack, Moody fled from the duplex into the surrounding forest.
> Several hours later, police located Moody. Moody gave a taped statement to Detective Bruce Larson. He acknowledged getting into an altercation with Gaile Anderson, although he said that Gaile Anderson attacked him first. He recalled picking up the knife but said he did not understand why he had stabbed Gaile Anderson.
> The State charged Moody with one count of first degree assault with a deadly weapon . . . and, alternatively, with attempted first degree murder . . . The State also filed a persistent offender notice.
> On March 8, 2003, the case went to trial. Moody waived his right to a jury and agreed to a bench trial. Immediately before trial, the court conducted a CrR 3.5 hearing. The defense did not present any evidence and the court concluded that Moody's custodial statements were admissible in the State's case in chief.
> On the first day of trial, Moody requested a new attorney because his counsel failed to communicate with him and had visited him only once. The court declined to appoint new counsel but authorized an additional attorney at public expense. From the second day of trial forward, the additional attorney was present.
> At trial, the court heard testimony about Moody's mental health issues and about his long, unsuccessful battle with alcoholism. Several defense experts testified that Moody could not have formed the intent to inflict great bodily harm on the night in question because of mental health problems and substance abuse.
> After hearing the evidence, the court found that "[n]o mental defect or disease prevented [Moody] from forming the intent to commit the crime" and that the "defendant's consumption of alcohol did not prevent him from forming the intent to commit the crime." The court further found that Moody committed first degree assault and that he was armed with a deadly weapon when he committed the crime.
> At sentencing, defense counsel indicated that he was not fully prepared to go forward and had planned to request a continuance, but his client did not want a continuance of the sentencing hearing. That same morning, the State submitted a sentencing memorandum with certified copies of a 1987 California information and felony disposition for aggravated assault with a deadly weapon (a beer bottle); and a 1993 Utah information, statement of defendant, and judgment and sentence for aggravated third degree assault with a deadly weapon (a car). Defense did not submit any materials for the court's consideration.
> The State argued that Moody's 1987 California and 1993 Utah convictions were comparable to second degree assault in Washington, making Moody a persistent offender under the Persistent Offender Accountability Act (POAA). Moody responded that the out-of-state convictions should not be treated as most serious offenses because he did not know that they were most serious offenses when he pleaded guilty to the crimes. He also argued that his attorney did not sign the plea form on the California offense, thereby rendering it unconstitutional.
> The trial court rejected Moody's arguments and found the prior out-of-state

> convictions were comparable. Accordingly, the court determined that Moody was a persistent offender, sentenced him to life without the possibility of parole, and imposed an additional 36 months for the deadly weapon enhancement. . . .

(Id., Exhibit 2, pp. 1-4) (internal citations and footnotes omitted).

Petitioner, through counsel, filed a direct appeal of his conviction and sentence, and on September 20, 2005, the Washington State Court of Appeals, Division II, affirmed both of them. (Id., Exhibits 2-3). Petitioner, again through counsel, filed a petition for review of the denial of his direct appeal with the Washington State Supreme Court, which denied the petition on May 3, 2006. (Id., Exhibits 6-7). On May 15, 2006, the court of appeals issued its mandate, stating that its September 20, 2005 decision became the decision terminating review on May 3, 2006. (Id., Exhibit 8).

On February 26, 2007, petitioner, this time acting *pro se*, filed a personal restraint petition with the Washington State Court of Appeals, Division II, which dismissed it on November 28, 2007. (Id., Exhibits 9, 12). Petitioner, again acting *pro se*, filed a motion for reconsideration of that dismissal with the court of appeals, which the Washington State Supreme Court treated as a motion for discretionary review, and which the Washington State Supreme Court Commissioner then denied in a ruling issued on November 3, 2008. (Id., Exhibits 13-14, 17-18, 24). On January 6, 2009, the supreme court denied petitioner's *pro se* motion to modify the Commissioner's ruling (Id., Exhibits 25-26).

The Washington State Court of Appeals, Division II, issued its certificate of finality on January 27, 2009, stating that its November 28, 2007 decision became final on January 6, 2009. (Id., Exhibit 27). On April 15, 2009, petitioner, who is being represented in this matter by *pro bono* counsel,[1] filed his petition for writ of federal *habeas corpus* relief with this Court. (Dkt. #2). In his petition, petitioner challenges the legality of his sentence, but not his conviction, based on the following grounds for federal *habeas corpus* relief:

> <u>Mr. Moody was Denied His Sixth Amendment Right to Effective Assistance of Trial and Appellate Counsel When Both Counsel Failed to Argue the Lack of "Comparability" of Moody's Two Foreign Convictions Based on the Differences in the Available Defenses.</u>

(Id. at p. 5 (emphasis in original)). There appears to be no issue of timeliness concerning the filing of the

---

[1] Petitioner has filed a motion for appointment of counsel at government expense (Dkt. #14), which the undersigned, in a separate order dated the same date herewith, has denied for the reasons set forth therein (see Order Denying Petitioner's Motion for Appointment of Counsel, dated the same date herewith).

REPORT AND RECOMMENDATION
Page - 3

petition with this Court, and no such issue has been raised by the parties.

Respondent did raise the issue of failure to exhaust state court remedies with respect to petitioner's ineffective assistance of counsel claim. (Dkt. #9, pp. 6, 8-11). In his reply, however, petitioner has chosen to voluntarily dismiss that claim. (Dkt. #13, p. 1). Accordingly, there also no longer seem to be any issues in regard to exhaustion requiring the Court's attention. Petitioner's remaining ineffective assistance of trial counsel claim, therefore, is now ripe for review. After carefully reviewing the petition, respondent's answer, petitioner's reply thereto, and the remaining record, the undersigned recommends that the Court deny the petition for the reasons set forth below.

## NO EVIDENTIARY HEARING IS REQUIRED

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Under 28 U.S.C. § 2254(e)(1), the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

Where a petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded. Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)). On the other hand, if the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows:

(A) the claim relies on--

    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2).

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998). It "is *not* required on issues

that can be resolved by reference to the state court record." Id. (emphasis in original). As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing not required if motion, files and records of case conclusively show petitioner is entitled to no relief) (quoting 28 U.S.C. § 2255).

Here, "[t]here is no indication from the arguments presented" by petitioner "that an evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief raised in his petition. Totten, 137 F.2d at 1177. Because, as discussed below, the issue raised by petitioner may be resolved based solely on the state court record and he has failed to prove his allegation of constitutional error, no evidentiary hearing is required.

# DISCUSSION

## I. Standard of Review

A federal petition for writ of *habeas corpus* filed on behalf of a person in custody pursuant to a judgment of a state court:

> [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, 28 U.S.C. § 2254(d) "defines two categories of cases" where such relief may be obtained. Williams v. Taylor, 529 U.S. 362, 404 (2000).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. Id.

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly

established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." Lockyer, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." Id.

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Juan H. V. Allen, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and it is the petitioner who has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

II. Scope of Review and Harmless Error

The district court may not "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, the Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68; see also Smith v. Phillips, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). In addition, for federal *habeas corpus* relief to be granted, the constitutional error must have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted). In other words, a petitioner is "not entitled to habeas relief based on trial error," unless he or she "can establish that it resulted in 'actual prejudice.'" Id.

III. Plaintiff Was Not Denied Effective Assistance of Counsel at Sentencing

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Strickland v. Washington, 466 U.S. 668, 686 (1984) (right to counsel is right to effective assistance of counsel). When ineffective

assistance of counsel is claimed, the standard to be used is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Counsel's representation must have been "so defective as to require reversal of a conviction." Id. at 687; see also Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) ("Only those petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ."). To prevail on an ineffective assistance of counsel claim, petitioner must show that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Therefore, unless both of these showings are made, the conviction, or in this case the sentence, cannot be said to have "resulted from a breakdown in the adversary process that renders the result unreliable." Id.

There also is a "strong presumption" that the performance of counsel "falls within the 'wide range of professional assistance.'" Kimmelman, 477 U.S. at 381. The proper standard with respect to such performance "is that of reasonably effective assistance" under "prevailing professional norms." Strickland, 466 U.S. at 687-88. Petitioner, accordingly, "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688; United States v. Vincent, 758 F.2d 379, 381 (9th Cir. 1985) (defense counsel's errors must be shown to reflect failure to exercise skill, judgment or diligence of reasonably competent attorney).

Defense counsel, furthermore, has "wide latitude in deciding how best to represent a client" and in regard to "making tactical decisions." Yarborough, 540 U.S. at 5; Strickland, 466 U.S. at 689. Counsel's competence "is presumed," and "[t]he reasonableness of" such "performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman, 477 U.S. at 381, 384. Not surprisingly, therefore, "the standard of review is highly deferential." Id. at 381. As the Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland, 466 U.S. at 689 (citations omitted).

As discussed above, to prevail on an ineffective assistance of counsel claim, petitioner also must "affirmatively prove prejudice." Id. at 693. In other words, it is not enough to show that "particular errors of counsel were unreasonable," and that they had "some conceivable effect on the outcome" of the trial. Id. Rather, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome." Id. When determining whether prejudice exists, the Court "'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at 381 (citing Strickland, 466 U.S. at 695).

As noted above, petitioner was convicted of first degree assault, which the trial court found to be "a most serious offense." (Dkt. #10, Exhibit 1, p. 5). The trial court further found he had been "convicted on at least two separate occasions of most serious offense felonies, at least one of which occurred before the commission of the other most serious offense for which the defendant was previously convicted," and thus that he was a "Persistent Offender." (Id.). That finding was based on a 1987 conviction in California for assault with a deadly weapon, and a 1993 conviction in Utah for third degree aggravated assault with a deadly weapon. (Id., Exhibit 1, p. 2, Exhibit 2, pp. 3, 9). Also as noted above, the Washington State Court of Appeals affirmed the trial court's sentencing of petitioner, finding specifically in relevant part:

> Moody contends that the State failed to meet its burden to establish the comparability and classification of his out-of-state crimes. His argument relies on the State's failure to submit the relevant out-of-state statutory provisions defining assault.
> Illegal or erroneous sentences may be challenged for the first time on appeal. *In re Personal Restraint of Fleming*, 129 Wn.2d 529, 532, 919 P.2d 66 (1996). Where a defendant's criminal history includes out-of-state convictions, the Sentencing Reform Act of 1981 (SRA) requires the convictions to be classified according to the comparable offense definitions and sentences under Washington law. *State v. Wiley*, 124 Wn.2d 679, 684, 880 P.2d 983 (1994).[2]

---

[2]"The SRA created a grid of sentencing ranges which vary by the defendant's offender score and the seriousness level of the crime." Wiley, 124 Wn.2d at 682; see also State v. Ford, 137 Wn.2d 472, 479 (1999). "The SRA directs [sentencing] courts to calculate an offender score by totaling a defendant's convictions for felonies and certain juvenile offenses," as well as "serious misdemeanor traffic offenses" in regard to "current convictions of felony traffic offenses." Wiley, 124 Wn.2d at 683 and n.1; Ford, 137 Wn.2d at 479. The offender score "measures a defendant's criminal history." Wiley, 124 Wn.2d at 683. Specifically, that score "estimates the dangerousness and overall culpability of the defendant." Id. A defendant's criminal history, in turn, encompasses the list of the defendant's prior convictions, whether they occurred in Washington, "in federal court or elsewhere." State v. Morley, 134 Wn.2d 588, 599 (1998) (quoting RCW 9.94A.030(12)(a)).

The purpose of classification is to give an out-of-state conviction the same effect as if it had been rendered in state or, in alternative terms, to treat a person convicted outside the state as if he had been convicted in Washington at the time of the offense. *State v. Weiand*, 66 Wn. App. 29, 34, 831 P.2d 749 (1992). To carry out this purpose, the court must (1) identify the comparable Washington offense; (2) classify the comparable Washington offense; and (3) treat the out-of-state conviction as if it were a conviction for the comparable Washington offense. *Weiand*, 66 Wn. App. at 31-32.[3]

It is the State, not the defendant, who bears the ultimate burden of ensuring the record supports the existence and classification of the out-of-state convictions. *State v. Ford*, 137 Wn.2d 472, 481, 973 P.2d 452 (1999). The State must prove the existence and classification of any prior out-of-state convictions by a preponderance of the evidence. *State v. McCorkle*, 137 Wn.2d 490, 495, 973 P.2d 461 (1999) (citing *Ford*, 137 Wn.2d at 482-83).[4] And the State must prove that the conviction would be a felony under Washington law. *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179 (1994).

The preferred method of proving prior convictions is a certified copy of the judgment and sentence. *Ford*, 137 Wn.2d at 480.[5] But the State may also introduce other comparable documents to establish criminal history. *Ford*, 137 Wn.2d at 480. A court is also entitled to rely on the defendant's acknowledgments when imposing a sentence. RCW 9.94A.530(2); *Ford*, 137 Wn.2d at 480.

Proper classification requires the sentencing court to "compare the elements of the out-of-state offense with the elements of potentially comparable Washington crimes." *Ford*, 137 Wn.2d at 479.[6] If the elements are not identical, or if the foreign

---

A prior conviction is one that "existed before the date of sentencing for the offense for which the defendant's offender score is currently being computed." Id. at 600. The sentencing court, therefore, "determines how many times the defendant has committed a felony prior to *this* conviction." Wiley, 124 Wn.2d at 683 (emphasis in original); see also Morley, 134 Wn.2d at 599 (offender score is based on prior criminal history). In addition, as noted by the court of appeals in this case, in regard to any "out-of-state convictions, the SRA requires [sentencing] courts to translate the convictions 'according to the comparable offense definitions and sentences provided by Washington law.'" Wiley, 124 Wn.2d at 683 (quoting former RCW 9.94A.360(3), now codified as RCW 9.94A.525(3)); Ford, 137 Wn.2d at 479; see also Morley, 134 Wn.2d at 597 ("The Legislature intended sentencing courts to include out-of-state convictions when making sentencing calculations under the SRA."). Accordingly, RCW 9.94A.525 (the "offender score statute") uses both out-of-state and federal convictions to calculate the offender score. Morley, 134 Wn.2d at 597-98 (citing former RC,W 9.94A.360(3)). Thus, "[w]hen using this statute to classify an out-of-state conviction, the first step" for the sentencing court "is to identify the 'comparable' Washington 'offense definition,' if there is one." State v. Weiand, 66 Wn.App. 29, 31 (1992).

[3] See also Ford, 137 Wn.2d at 479 ("To properly classify an out-of-state conviction according to Washington law, the sentencing court must compare the elements of the out-of-state offense with the elements of potentially comparable Washington crimes."); In re Personal Restraint of Lavory, 154 Wn.2d 249, 255 (2005); Wiley, 124 Wn.2d at 684.

[4] See also In re Lavery, 154 Wn.2d at 256 (existence of prior conviction need not be proved beyond reasonable doubt); State v. Cabrera, 73 Wn.App. 165, 168 (1994) (state must prove by preponderance of evidence that prior conviction exists). Thus, while "evidence of some kind" must be introduced by the State "to support the alleged criminal history," including the classification of any out-of-state convictions, ultimately "[a]ll a sentencing court needs to do is find that the prior conviction exists." In re Lavery, 154 Wn.2d at 256; Ford, 137 Wn.2d at 480.

[5] See also In re Lavory, 154 Wn.2d at 257 (certified copy of prior judgment and sentence is highly reliable evidence). "[T]his is also true of foreign crimes that are identical on their face." Id.

[6] Thus, the sentencing court first must determine "whether the foreign offense is legally comparable – that is, whether the elements of the foreign offense are substantially similar to the elements of the Washington offense." State v. Thiefault, 160 Wn.2d 409, 415 (2007); see also In re Lavery, 154 Wn.2d at 255 ("[F]or the purposes of determining the comparability of crimes, the court must first compare the elements of the crimes."). "If the elements of the foreign conviction are comparable to the elements of [its Washington counterpart] on their face, the foreign crime counts toward the offender score as if it were the comparable Washington offense." In re Lavory, 154 Wn.2d at 256.

REPORT AND RECOMMENDATION
Page - 9

statute is broader than the Washington statute, then the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine whether the conduct would have violated the comparable Washington statute. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998).[7]

In order for a defendant to be sentenced as a persistent offender, he must (1) have been previously convicted on at least two separate occasions; (2) in this state or elsewhere; (3) of felonies that, under the laws of this state, would be considered most serious offenses; and (4) would be included in the offender score under RCW 9.94A.525. *See* RCW 9.94A.030(32); RCW 9.94A.030(28).[8]

At his sentencing hearing, Moody did not deny the existence of his prior convictions, but, rather, he objected to their proper classification on the basis that he was not aware that the out-of-state offenses were strike offenses at the time he entered pleas to those charges. He further argued that the California conviction was unconstitutional because a lawyer did not sign the plea form.[9]

For the first time on appeal, Moody asserts that the State failed to meet its burden of introducing evidence to support the classification of his out-of-state crimes. More specifically, he argues that the State did not provide the sentencing court with the relevant statutory provisions defining the predicate crime of assault in California and Utah.[10] These arguments are not persuasive.

In Washington, a person is guilty of second degree assault when he assaults another with a deadly weapon. RCW 9A.36.021(c). Washington recognizes three common law definitions of assault: (1) attempt, with unlawful force, to inflict bodily injury upon another; (2) unlawful touching with criminal intent; and (3) putting another in apprehension of harm. *State v. Aumick*, 126 Wn.2d 422, 426, 894 P.2d 1325 (1995).

---

[7] Put another way, "[i]f the elements [of the out-of-state and Washington offenses] are not identical" or are not at least "substantially similar" – that is, if they are not "legally comparable" – or if Washington law "defines the offense more narrowly than does the [corresponding] foreign statute, it may be necessary to look into the record of the out-of-state conviction to determine whether the defendant's conduct would have violated the comparable Washington offense." Ford, 137 Wn.2d at 479. In other words, as noted by the court of appeals here, "[i]f the elements of the foreign offense are broader than the Washington counterpart," then the sentencing court must determine whether those offenses are "factually comparable," i.e., "whether the conduct underlying the foreign offense would have violated the comparable Washington statute." Thiefault, 160 Wn.2d at 415.

Further, "[i]n making its factual comparison, the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt." Id. In addition, again as noted by the court of appeals in this case, "the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine if the conduct itself would have violated a comparable Washington statute." In re Lavery, 154 Wn.2d at 841. In doing so, however, the sentencing court is to keep in mind that "the elements of the charged crime must remain the cornerstone of the comparison," as "[f]acts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial." Id. (quoting Morley, 134 Wn.2d at 606).

[8] As noted by the court of appeals here, a persistent offender is "an offender who is convicted of a most serious offense, and who has two prior convictions, in this state or elsewhere, for crimes which would be most serious offenses under Washington law, and which would be included in the offender score under" RCW 9.94A.525. Morley, 134 Wn.2d at 602-03. A "[m]ost serious offense" includes the crime of "[a]ssault in the second degree." RCW 9.94A.030(29)(b). Under the POAA – "also known as the 'three strikes and you're out' law" – "[i]f the sentencing court finds a defendant is a persistent offender," as the trial court did in this case, "the court must sentence the defendant to life in prison without the possibility of parole." Morley, 134 Wn.2d at 602 (quoting State v. Thorne, 129 Wn.2d 736, 746 (1996)). A prior, foreign conviction counts as a "strike" for purposes of the POAA, if it is comparable to a Washington "strike offense." In re Lavery, 154 Wn.2d at 254. Conversely, if such a conviction is determined to be "neither legally nor factually comparable," it may not count as a strike under the POAA. Thiefault, 160 Wn.2d at 415.

[9] In a footnote, the court of appeals further stated that "[i]t is noteworthy that these arguments are not objections to either comparability or classification." (Id., Exhibit 2, p. 8 n.6).

[10] In another footnote, the court of appeals noted that "[t]he State provided the sentencing court with copies of the statutes for the comparable out-of-state offenses, but did not provide the statutory provisions defining the underlying assault." (Id., Exhibit 2, p. 8 n.7).

In California, Moody pleaded guilty to assault with a deadly weapon. CAL. PENAL CODE § 245 (1987). According to the charging documents and plea paperwork, he assaulted another party with a beer bottle. Under California law, the crime of assault occurs when the perpetrator unlawfully attempts to commit a violent injury on the person of another with a present ability to do so. CAL. PENAL. CODE § 240. Assault with a deadly weapon in Washington encompasses the California assault definition and is comparable to the California crime of second degree assault with a deadly weapon.

In Utah, Moody pleaded guilty to third degree aggravated assault. According to the charging documents and plea paperwork, Moody assaulted another party with a motor vehicle. Under Utah law, third degree aggravated assault occurs when the perpetrator assaults another person using a dangerous weapon or other means or force likely to produce death or serious bodily injury. UTAH CODE ANN. § 76-5-103 (1993). Assault occurs when the perpetrator (a) attempts to do bodily injury to another with unlawful force; (b) threatens to do bodily injury to another with a show of immediate force or violence; or (c) commits an act with unlawful force or violence, and it causes bodily injury or creates a substantial risk of bodily injury to another. UTAH CODE ANN. § 76-5-102. Since the elements of the two crimes are substantially similar, Moody's Utah offense is comparable to second degree assault in Washington.

Second degree assault is a strike offense under the POAA. *See* RCW 9.94A.030(28). Moody's California and Utah offenses are substantially similar to second degree assault in Washington and are therefore legally comparable crimes. Further, Moody admitted the facts underlying his out-of-state convictions and these facts are independently sufficient to establish comparability. *See Morley* 134 Wn.2d at 606.

The State submitted proper proof of Moody's out-of-state criminal convictions and properly identified the relevant statutes for comparability analysis. Thus, the State provided a sufficient record for the sentencing court to determine whether Moody's out-of-state crimes are comparable to Washington strike offenses. Further, the sentencing court correctly compared and classified Moody's out-of-state convictions, concluded that Moody's out-of-state offenses were strikes, and sentenced him to life without parole under the POAA.

(Id., Exhibit 2, pp. 6-10). In rejecting petitioner's personal restraint petition, the Washington State Court of Appeals stated in relevant part as follows:

. . . Petitioner contends the trial court incorrectly found a prior Utah conviction comparable to a most serious offense in Washington. He also contends his lawyer ineffectively assisted him. We dismiss his petition.

We rejected Petitioner's comparability argument on direct appeal. We will not reconsider grounds previously rejected on the merits unless a petitioner demonstrates the interests of justice require relitigation. *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 445, 21 P.3d 687 (2001); *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986). Petitioner does not justify relitigation, and we will not reconsider our earlier decision.

Similarly, on direct appeal, we rejected Petitioner's claims that his lawyer ineffectively assisted him by not sufficiently meeting with him to prepare for trial, by not filing motions, and by pressuring him to waive jury trial. Petitioner makes the same claims now. He again fails to justify relitigation.

Petitioner also claims that his lawyer ineffectively assisted him by failing to challenge the comparability of the prior Utah conviction . . . This does not necessarily justify relitigation of Petitioner's ineffective assistance claim, because new factual bases are *not* necessarily sufficient to create new legal grounds for relief. *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488, 789 P.2d 731 (1990). Assuming he can relitigate, Petitioner fails to demonstrate that his lawyer's purported failures harmed him because . . . this court already held that the Utah conviction is comparable to a most serious offense in Washington . . . Petitioner's ineffective assistance claim thus

REPORT AND RECOMMENDATION
Page - 11

fails because he does not demonstrate prejudice. *See State v. Lord*, 117 Wn.2d 829,
                883-84, 822 P.2d 177 (1991).

(Id., Exhibit 12, pp. 1-2) (internal footnotes omitted). In explaining his ruling denying petitioner's motion for discretionary review, the Washington State Supreme Court Commissioner stated in relevant part:

> . . . Mr. Moody contends trial counsel was ineffective in not arguing that [his] prior California and Utah convictions were not comparable to Washington strike offenses. The acting chief judge dismissed the petition partly because Mr. Moody raised the comparability issue unsuccessfully on direct appeal. *See In re Pers. Restraint of Brown*, 143 Wn.2d 431, 445, 21 P.3d 687 (2001) (court will not consider grounds previously rejected on appeal unless petitioner demonstrates interests of justice require reconsideration).
> Mr. Moody claims that in light of this court's recent decision in *State v. Thiefault*, 160 Wn.2d 409, 158 P.3d 580 (2007), his ineffective assistance of counsel argument should be considered in the interests of justice. *See In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999) (intervening material change in law or other valid reason for not raising factual or legal argument on direct appeal may justify reexamining issue in personal restraint petition). In *Thiefault*, this court vacated a persistent offender sentence because defense counsel was ineffective in not raising a meritorious challenge to the comparability of a prior out-of-state conviction. *Thiefault*, 160 Wn.2d at 417. But that holding was grounded on *In re Personal Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005), which held an out-of-state conviction that is neither legally nor factually comparable to a Washington strike offense cannot be used as [a] strike for persistent offender purposes. *See Thiefault*, 160 Wn.2d at 415-16. And in Mr. Moody's direct appeal, the Court of Appeals considered *Lavery* in holding that Mr. Moody's prior Utah and California convictions were comparable to the Washington strike offense of second degree assault. Because *Thiefault* turns on *Lavery*, that more recent decision is not a material intervening authority justifying reconsideration of the comparability issue.

(Id., Exhibit 24, pp. 1-2).

In asserting his ineffective assistance of counsel claim, petitioner argues that neither the California nor Utah offenses are comparable to second degree assault in Washington, because they require different mental states and provide for different defenses with respect thereto. Petitioner further argues that while trial counsel did object to the trial court's findings at sentencing, the objections he offered – that because petitioner was not aware the out-of-state convictions were most serious offenses when he pleaded guilty thereto, they should not be treated as such, and that defense counsel did not sign petitioner's plea form on the California offense, rendering it unconstitutional – were irrelevant. In addition, petitioner argues trial counsel failed to submit any written materials for the sentencing court's consideration. Had trial counsel made the proper comparability arguments regarding his prior convictions, petitioner asserts, it is clear that at least one of those convictions would not have counted as a strike offense.

Upholding petitioner's ineffective assistance of counsel claim on this basis, though, would require the Court to find the court of appeals erred in its comparability analysis. However, doing so would result

REPORT AND RECOMMENDATION
Page - 12

in the Court having to reexamine a state-court determination on a state-law question, which is prohibited in a federal *habeas corpus* proceeding. See Estelle, 502 U.S. at 67-68. Rather, the Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68; see also Smith, 455 U.S. at 221 ("[F]ederal courts hold no supervisory authority over state judicial proceedings."). Thus, even if petitioner is correct in arguing that neither prior out-of-state conviction is comparable to the crime of second degree assault in Washington – a finding the undersigned does not make here[11] – the Court is bound by the court of appeals' determination that they are both legally and

---

[11]Specifically, petitioner argues that under Utah law aggravated assault can be committed intentionally, knowingly or recklessly, and thus defenses such as diminished capacity, available in Washington, are unavailable in that state. In Utah, "a person commits aggravated assault" by: (a) attempting, "with unlawful force or violence, to do bodily injury to another," (b) making "a threat, accompanied by a show of immediate force or violence, to do bodily injury to another," or (c) committing "an act . . . with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another," and that person (i) "intentionally causes serious bodily injury to another," or (ii) "under circumstances not amounting to" intentionally causing serious bodily injury to another, "uses a dangerous weapon . . . or other means or force likely to produce death or serious bodily injury." Utah Code Ann. § 76-5-102, § 76-5-103. Because "[n]o culpable mental state is specifically defined for the crime of assault with a deadly weapon," and because "[t]he [Utah] Legislature "has explicitly stated that 'when the definition of an offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge or recklessness shall suffice to establish criminal responsibility," petitioner asserts a defendant in Utah can "be found criminally responsible for assault with a deadly weapon if his [or her] actions were either intentional, knowing *or* reckless." State v. Royball, 710 P.2d 168, 170 (Utah 1985) (citation omitted) (emphasis in original).

Petitioner further argues the form of assault for which he was convicted in California, contains a mental state that, again unlike under Washington law, does not permit diminished capacity as a defense. In California, any person may commit "an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury," even if he or she did not "really intend" to produce an injury, because "[t]he *intention* to actually injure another is not mentioned in" the statute defining that crime. People v. Hood, 1 Cal.3d 444, 453 (1969); Cal. Penal Code § 245(a)(1); see also People v. Rocha, 3 Cal.3d 893, 898 (1971) (legislative history of section 245 indicates legislature differentiated general intent crime of assault with deadly weapon from specific intent crimes, and thus it was unnecessary to charge defendant with, or for jury to find, assault was made with intent to cause harm). Accordingly, in California, while "the criminal intent which is required for assault with a deadly weapon . . . is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another . . . The intent to cause any particular injury . . . or to injure in the sense of inflicting bodily harm is not necessary." Rocha, 3 Cal.3d at 899 (internal footnotes and citation omitted); see also People v. Velez, 175 Cal.App.3d 785, 790 (1985) (assault with deadly weapon is general intent crime). Since defenses such as "unconsciousness caused by voluntary intoxication" are "available only as a partial defense to an offense requiring a specific intent," furthermore, "it is not a defense to a general intent crime such as assault with a deadly weapon." Velez, 175 Cal.App.3d 791.

In contrast to Utah and California, petitioner asserts, Washington's law on second degree assault with a deadly weapon is a specific intent crime. "A person is guilty of assault in the second degree" in Washington, "if he or she, under circumstances not amounting to assault in the first degree: . . . Assaults another with a deadly weapon." RCW 9A.36.021(1)(c). "Because the term assault is not statutorily defined, Washington courts apply the common law definition to the crime." Aumick, 126 Wn.2d at 426 n.12. As noted by the court of appeals in this case, Washington courts recognize the following three definitions of assault: "(1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm." Id. In support of his assertion that second degree assault with a deadly weapon in Washington is a specific intent crime, petitioner points to State v. Eakins, 127 Wn.2d 490 (1995), in which the Washington State Supreme Court did state that "[a]n essential element of second degree assault is specific intent either to cause bodily harm or to create apprehension of bodily harm," and that "[d]iminished capacity is an affirmative defense against second degree assault." Id. at 496; see also State v. Eastmond, 129 Wn.2d 497, 500 (1996); State v. Byrd, 125 Wn.2d 707, 712-13 (1995).

Eakins, Eastmond and Byrd, however, all involved second degree assault "by attempt to cause fear and apprehension of injury," rather than "by attempt to cause injury" itself. Eastmond, 129 Wn.2d at 500; see also Eakins, 127 Wn.2d at 492-93; Byrd, 125 Wn.2d at 713. In this case by contrast, in regard to his prior Utah and California convictions, petitioner pleaded guilty to having

REPORT AND RECOMMENDATION
Page - 13

factually comparable.

Because, as respondent points out, the Washington State Court of Appeals did find the California and Utah convictions to be comparable to a Washington "strike" offense, any failure on the part of trial counsel to contest the comparability issue cannot be deficient. Petitioner argues, though, that the court of appeals's rejection of appellate counsel's claims – that the State did not provide the relevant statutory definition of assault in Utah, and that the failure to provide that definition constituted a failure to prove comparability – hardly constitutes a complete comparability determination. But again, whether the court of appeals's determination was "complete" to the extent petitioner argues it should have been, that is, to the extent such a determination was flawed as discussed above, the Court lacks the authority to reexamine that determination given that it solely concerns an issue of state law. For the same reason, the Court may not reexamine the court of appeal's decision to determine whether the Utah conviction more appropriately

---

consummated the assaults, i.e., battery. (Dkt. #10, Exhibit 21, attachments to State's Sentencing Memorandum); Byrd, 125 Wn.2d at 712 n.3. Specifically, petitioner pleaded guilty in Utah to two counts of aggravated assault "by the use of a dangerous weapon to wit" a "motor vehicle" and "by striking . . . with my truck" respectively, and in California to having "willfully and unlawfully" committed an assault with a deadly weapon, "to wit, a bottle, and by means of force likely to produce great bodily injury." (Id.). In addition, other Washington cases – all admittedly court of appeals cases, but none of which specifically have been overruled on this issue – have held specific intent is not a required element of second degree assault. See State v. Morreira, 107 Wn.App. 450, 459 (2001) (intent to injure is not element of second degree assault); State v. Davis, 64 Wn.App. 511, 515-16 (1992) (noting that elements of some crimes do require specific intent, and listing by example RCW 9A.36.021(1)(b) and (d), but not (c), i.e., assault with a deadly weapon); State v. Fryer, 36 Wn.App. 312, 316 (1983) ("[I]t is clear that intent to injure is not an element of second degree assault. The State was only required to show that the defendant acted knowingly, *i.e.*, that he was aware of facts, circumstances, or a result described by a statute defining an offense.") (internal citation omitted); State v. Strand, 20 Wn.App. 768, 779 (1978) ("RCW 9A.36.020, subsection(1)(c) . . . merely requires a knowing assault upon another with a weapon or other instrument or thing likely to produce bodily harm. Intent to injure is not an element of that section.").

Accordingly, it is far from clear that Washington courts uniformly view second degree assault – including second degree assault with a deadly weapon – as a specific intent crime, in regard to which diminished capacity is an available defense, and that therefore it is not legally comparable to petitioner's prior out-of-state assault convictions. The undersigned, thus rejects petitioner's assertion that had trial counsel made the comparability arguments he now makes in his federal *habeas corpus* petition, at least one of those convictions would not have been counted as a strike offense. The undersigned also rejects petitioner's contention that the Washington Supreme Court Commissioner "said as much" – i.e., agreed the convictions were not legally comparable – in his ruling denying petitioner's motion for discretionary review. (Dkt. #2, p. 10). Rather, in that ruling, the Commissioner merely stated that:

> Mr. Moody arguably asserts a more persuasive comparability claim here than he presented on direct appeal. But that claim is a refinement of Mr. Moody's previously rejected contentions. Supporting a previous ground for relief with different legal arguments is insufficient to overcome the interest in finality. *See In re Pers. Restraint of Lord*, 123 Wn.2d 296, 329, 868 P.2d 835 (1994).

(Dkt. #10, Exhibit 24, p. 2) (emphasis added). Clearly, though, calling this more recent comparability argument "arguably . . . more persuasive," is not at all the same thing as stating that had it been put forth along with petitioner's previously raised ground for relief, the outcome would have been any different. Indeed, as noted above, the Commissioner found petitioner's argument merely to be "a refinement of" his "previously rejected contentions." (Id.).

REPORT AND RECOMMENDATION
Page - 14

should have been compared to the Washington crime of vehicular assault as he now claims.[12]

Indeed, also as discussed above, it is far from clear that the Washington State Court of Appeals in fact provided a flawed comparability determination, given the apparent inconsistency among the state's appellate courts as to the specificity of intent required to establish the existence of second degree assault. Petitioner next argues that there is nothing to suggest that the court of appeals *sua sponte* directly decided the issue of comparability of his prior out-of-state convictions. Again, though, as discussed above, this is exactly what the court of appeals apparently did, expressly finding those convictions to be comparable to second degree assault in Washington, on both a legal and factual basis,[13] and therefore to be countable as strikes under the POAA, even if it is the case, as petitioner asserts, that appellate counsel did not properly raise the issue of comparability on appeal.

Accordingly, while petitioner is correct that where the state courts do "not reach the merits" of a claim, by, say, denying it on procedural grounds, "there is no state court decision on" that claim "to which to accord deference," such is not the case here, since, as discussed above, the issue of comparability was

---

[12] In its decision denying petitioner's personal restraint petition, the Washington State Court of Appeals rejected this claim as being "irrelevant as well as redundant." (Dkt. #10, Exhibit 12, p. 1, n.1).

[13] As far as factual comparability in this case is concerned, petitioner asserts that nothing in the plea form he signed supports the conclusion that he admitted committing the Utah assault intentionally or that he disclaimed any reliance on the unavailable defense of intoxication. As for this last point, there is nothing in the plea and other related forms contained in the record to suggest that intoxication at all was a factor in petitioner's ability, or lack thereof, to commit the assault, even though alcohol may have been involved at the time. See (Dkt. #10, Exhibit 28, (transcript) p. 566). Second, as noted by the trial court, the information upon which petitioner's guilty plea was based contains a probable cause statement, in which the victims of the assault reported that petitioner "had been arguing with them just before" he "ran his truck into them." (Id., Exhibit 21, attachments to State's Sentencing Memorandum, Exhibit 28, (transcript) p. 566). The Court cannot say the trial court made an unreasonable determination of the facts in finding this evidence contradicted petitioner's assertion at the time that the assault was "just a DUI with an accident." (Id., Exhibit 28, (transcript) p. 566). Indeed, as noted above, "[a] determination of a factual issue made by a State court shall be presumed to be correct," unless petitioner can rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). He has not done so here.

Petitioner similarly argues that the "felony disposition statement" he signed in regard to his California conviction fails to indicate the factual basis for his guilty plea with respect thereto, and thus that it is impossible for this Court to now conclude that conviction is factually comparable to second degree assault under Washington law. Once more, though, the Court must accept the comparability determination made by the Washington State Court of Appeals in this case. Nevertheless, the Court disagrees with petitioner that there was an insufficient factual basis upon which the court of appeals could find the California offense was factually comparable. The information upon which petitioner's California guilty plea was based expressly states that "he did willfully and unlawfully commit an assault . . . with a deadly weapon, to wit, a bottle, and by means of force likely to produce great bodily injury." (Dkt. #10, Exhibit 21, attachments to State's Sentencing Memorandum) (emphasis added). This the trial and appellate courts could reasonably find constituted evidence of the intent, specific or general, required by Washington law to commit second degree assault. See Black's Law Dictionary (8th ed. 2004) (Westlaw) (defining the term "willful" to mean voluntary and intentional, and, more specifically, to mean intentionally or purposely when used in definitions of crimes). Accordingly, while, as noted above, a federal *habeas corpus* petition also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" such is not the case here in regard to either of petitioner's prior out-of-state convictions. Juan H., 408 F.3d at 1270 n.8 (quoting 28 U.S.C. § 2254(d)(2)).

REPORT AND RECOMMENDATION
Page - 15

1  addressed on its merits. See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). In addition, petitioner
2  argues that because the state courts did not adjudicate the prejudice prong of his ineffective assistance of
3  counsel claim, there is no state decision on that prong, and therefore the Court's review thereof should be
4  *de novo*. See Wiggins v. Smith, 539 U.S. 510, 534 (2003) ("[O]ur review is not circumscribed by a state
5  court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the
6  *Strickland* analysis."). While true, petitioner still must demonstrate that "there is a reasonable probability
7  that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.
8  (quoting Strickland, 466 U.S. at 694).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome'" of the proceeding. Id. The undersigned agrees with respondent that such a probability does not exist here, because trial counsel's performance cannot be seen as being either deficient or prejudicial in light of the Washington State Court of Appeals's comparability determination regarding petitioner's prior out-of-state convictions. That is, once more as discussed above, this Court is bound by that determination, as it solely concerns an issue of state law. Given that the court of appeals determined petitioner's prior convictions to be comparable to the Washington offense of second degree assault and thus were strike offenses under the POAA, any failure to object to comparability is not deficient. For the same reason, there is no reasonable probability that had such an objection been made, the outcome of the proceedings in this case, and thus in petitioner's sentencing, would have changed.[14]

## CONCLUSION

For the reasons set forth above, petitioner has failed to show the state courts' decisions on the issue of ineffective assistance of trial counsel were either "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in

---

[14] The undersigned also agrees with respondent that petitioner's reliance on Thiefault – which found that because the prior out-of-state offense at issue in that case was neither legally nor factually comparable to its Washington counterpart, defense counsel "provided deficient representation" by not objecting to the trial court's comparability analysis – to be misplaced. 160 Wn.2d at 415-17. In the instant case, as discussed above, the Washington State Court of Appeals found petitioner's prior out-of-state convictions to be both legally and factually comparable. In Thiefault, furthermore, the Washington State Supreme Court based its determination of factual non-comparability on the lack of "admitted" facts in the trial court's record, and the failure of the State to "produce the actual information or guilty plea agreement." Id. at 415-16 and n.2. Again, such is not the case here. Indeed, defense counsel's deficient representation in Thiefault was found to have prejudiced the defendant, and thus to have amounted to ineffective assistance of counsel, because it was unclear, unlike in this matter, whether the State would have been able to "produce the information to which" the defendant "pleaded guilty," or that "such documentation" would "have provided facts sufficient to find" the out-of-state and Washington crimes comparable. Id. at 417.

REPORT AND RECOMMENDATION
Page - 16

light of the evidence presented." 28 U.S.C. § 2254(d). Accordingly, the Court should deny his petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **October 30, 2009**, as noted in the caption.

DATED this 2nd day of October, 2009.

Karen L. Strombom
United States Magistrate Judge